# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SHERMAN P. LOHR and JOYCE    )
K. LOHR,           )
     Plaintiffs,      )
             )
     v.         )   1:07CV374
             )
CONSECO, INC., CONSECO LIFE   )
INSURANCE COMPANY, CONSECO  )
INSURANCE GROUP, CONSECO    )
SERVICES, L.L.C., all in their individual )
corporate capacities and as successors-  )
in-interest to Massachusetts General   )
Life Insurance Company, RAYMOND  )
E. BOSTIAN, and BOSTIAN     )
RETIREMENT AND INVESTMENT   )
SPECIALISTS, INC.,       )
             )
     Defendants.    )

## MEMORANDUM OPINION

BEATY, Chief District Judge.

   This matter comes before the Court on Plaintiffs' Motion to Remand [Document #22] pursuant to 28 U.S.C. § 1447(c) seeking to remand this case from federal district court back to North Carolina state court and requesting an award of costs and attorneys' fees. In response, Defendants have filed an Opposition to Plaintiffs' Motion to Remand [Document #26]. Magistrate Judge Trevor Sharp filed a Recommendation [Document #29] recommending that Plaintiffs' Motion to Remand be granted, and that Plaintiffs' request for costs and attorneys' fees be denied, and notice was served on the parties pursuant to 28 U.S.C. § 636(b). Defendants

subsequently filed timely Objections to the Magistrate Judge's Recommendation [Documents #31 and #32]. The Court has reviewed the Objections and the portions of the Recommendation to which objection was made, and has made a *de novo* determination which is in accord with the Magistrate Judge's rulings, however, for different reasons than those reached in the Recommendation. For the reasons set forth herein, the Court will grant Plaintiffs' Motion to Remand and deny Plaintiffs' request for attorneys' fees and costs.

## I.    FACTUAL BACKGROUND

On or about June 4, 1996 and March 29, 1999, husband and wife Sherman P. and Joyce K. Lohr ("Plaintiffs") purchased three life insurance policies with Massachusetts General Life Insurance Company (the "Company") from Defendant Raymond E. Bostian, a professional insurance agent acting on the Company's behalf. Plaintiffs allege that prior to signing their respective applications for the policies and at the time of delivery, Bostian used illustrations and made oral representations to Plaintiffs that if Plaintiffs paid certain monthly and/or annual premiums, the policies had options that would allow Mr. Lohr's 1996 policy to be "paid up" in seven or nine years, Mrs. Lohr's 1996 policy to be "paid up" in seven or twelve years, and Mrs. Lohr's additional 1999 policy to be "paid up" in ten years. Plaintiffs further allege that Bostian knew or should have known but failed to disclose that the policies did not have "paid up" options as represented. Furthermore, Plaintiffs allege that Bostian failed to make Plaintiffs aware that the policies could not be "paid up" in the time periods as represented. Plaintiffs allege that they applied for, purchased, and accepted the life insurance policies based on Bostian's initial representations.

2

Plaintiffs further contend that on several occasions after purchasing the policies, Bostian repeatedly assured Plaintiffs that their three policies had "paid up" provisions. In particular, in 2003 on or about the seven-year anniversary date of the 1996 policies, Mrs. Lohr contacted Bostian to inquire about the status of the policies. Plaintiffs allege that Bostian met with Mrs. Lohr and explained that neither of the 1996 policies would be "paid up" in seven years, but rather both of the 1996 policies would achieve "paid up" status in nine years from the date of their purchase. In March 2005, near the nine-year anniversary of the 1996 policies, Mrs. Lohr met with a professional financial advisor at her local bank to review the policies. The advisor informed her that the policies could not be "paid up" as represented by Bostian, after which Mrs. Lohr filed a complaint with the North Carolina Department of Insurance. Subsequently, Plaintiffs surrendered their three life insurance policies. Thereafter, on April 5, 2007, Plaintiffs filed an action in the General Court of Justice, Superior Court Division for Davidson County, North Carolina against Defendants Conseco, Inc., Conseco Life Insurance Company, Conseco Insurance Group, and Conseco Services, LLC (collectively "Conseco"); and Raymond E. Bostian and Bostian Retirement and Investment Specialists, Inc. (collectively "Bostian") for negligent misrepresentation, breach of fiduciary duty, constructive fraud, failure to procure, fraud, rescission, and unfair and deceptive trade practices, all based on Bostian's sale of the three life insurance policies issued by Conseco[1] to Plaintiffs.

Plaintiffs are resident citizens of North Carolina, as is Raymond E. Bostian. Bostian Retirement and Investment Specialists, Inc. is a corporation organized and existing under the

---

[1] Conseco is the successor to the Massachusetts General Life Insurance Company, which is the company that issued the three life insurance policies to Plaintiffs.

3

laws of North Carolina, with its principal place of business in North Carolina. The group of Conseco companies are organized and exist under the laws of Delaware or Indiana, with their principal places of business in Indiana. Despite the fact that Plaintiffs and Bostian share North Carolina citizenship, Conseco nevertheless filed a Notice of Removal and removed this action to the United States District Court, Middle District of North Carolina on the basis of diversity jurisdiction. In the Notice of Removal, Conseco acknowledged that the presence of Bostian would ordinarily create a lack of complete diversity, thus precluding the exercise of federal jurisdiction in this case. However, Conseco contends in the Notice of Removal that Bostian was fraudulently joined to defeat diversity jurisdiction and therefore should be disregarded as a party for jurisdictional purposes. Plaintiffs subsequently filed a Motion to Remand the action to state court on the basis that the Court lacks diversity jurisdiction since there is no complete diversity given that Plaintiffs and Bostian are both residents of North Carolina. Conseco filed an Opposition to Plaintiffs' Motion to Remand contending that removal is indeed proper because Bostian and Bostian Retirement and Investment Specialists should be disregarded as parties because they have been fraudulently joined. A Recommended Decision was issued in this case recommending that Plaintiffs' Motion to Remand be granted, to which both Conseco and Bostian (collectively "Defendants") objected. The matter is now ripe for consideration by the Court.

II.    **ANALYSIS**

   A.    **Removal Jurisdiction and Fraudulent Joinder**

   Defendants contend that removal is otherwise proper in this case based upon diversity

4

jurisdiction given that Plaintiffs fraudulently joined Bostian to defeat diversity, and therefore Bostian may be disregarded as a party for jurisdictional purposes. Removal in this case is governed by 28 U.S.C. § 1441, which allows defendants to remove to federal court any action over which the federal court would have original jurisdiction, including jurisdiction on the basis of diversity. Diversity jurisdiction, in turn, is defined by 28 U.S.C. § 1332(a), which provides that federal district courts have original jurisdiction over civil actions between citizens of different States where the matter in controversy exceeds $75,000. Moreover, in a diversity case, complete diversity is required in that none of the plaintiffs may share citizenship with any of the defendants. See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373, 98 S. Ct. 2396, 2402, 57 L. Ed. 2d 274 (1978). If a federal court determines that it lacks subject matter jurisdiction over a case that has been removed from state court, it must remand that case back to state court. See 28 U.S.C. § 1447(c). In this case, Defendants removed this action to this court based on diversity jurisdiction; therefore, since the jurisdictional amount is not at issue in this case, the jurisdictional inquiry is whether complete diversity exists despite the presence of Bostian as a non-diverse party.

The party seeking removal bears the burden of showing that the district court has original jurisdiction. Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994). If complete diversity is lacking, the party seeking removal can nevertheless satisfy its burden by establishing that the non-diverse defendant was fraudulently joined. See Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999) ("The 'fraudulent joinder' doctrine permits removal when a nondiverse party is (or has been) a defendant in the case."). The fraudulent joinder doctrine

5

"effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Id. To establish fraudulent joinder, the removing party must demonstrate either " '[t]hat there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts.' " Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993) (quoting B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. 1981)) (emphasis in original). In the present case, Defendants do not allege bad faith or fraud in Plaintiffs' pleading of jurisdictional facts, thus the fraudulent joinder inquiry here is whether Plaintiffs have any possibility of establishing a cause of action against Bostian in a North Carolina court.

"The party alleging fraudulent joinder bears a heavy burden - it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999). "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." Id. Moreover, "[i]n order to determine whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead 'consider the entire record, and determine the basis of joinder by any means available.' " John S. Clark Co. v. Travelers Indem. Co., 359 F. Supp. 2d 429, 436 (M.D.N.C. 2004) (quoting AIDS Counseling and Testing Ctrs. v. Group W Television, Inc., 903 F. 2d 1000, 1004 (4th Cir. 1990)). Therefore, in the present case, the Court will turn to an analysis of the parties' contentions in

6

light of the legal standards discussed above in order to determine whether Defendants have established that Plaintiffs fraudulently joined Bostian, and specifically whether Defendants have established that there is no possibility that Plaintiffs would be able to establish a cause of action against Bostian in state court such that Bostian would be disregarded for diversity purposes and removal would be proper in this case.

## B.    Application of Legal Standards

### 1.    The Preclusive Effect of a Foreign Class Action Judgment

Defendants argue that there is no possibility that Plaintiffs would be able to establish a cause of action against Bostian in a state court based on Defendants' contentions that a prior settlement and judgment in a California state court class action has preclusive effect upon Plaintiffs' present claims. Specifically, Defendants contend that Plaintiffs were putative members of the class action <u>Dupell v. Massachusetts Gen. Life Ins. Co.</u>, Santa Clara Superior Court, CV 768991 (2000), which was settled and concluded by Stipulation of Settlement ("Settlement") on November 22, 2000. As such, Defendants contend that the Settlement language, and specifically the incorporated release provision, bars the types of claims that Plaintiffs now assert against Bostian. Defendants contend that the class as defined in <u>Dupell</u> includes Plaintiffs because the class includes anyone, like Plaintiffs here, who purchased a life insurance policy from Massachusetts General Life Insurance Company between January 1, 1984 and July 23, 1999. Defendants further contend that Plaintiffs failed to opt-out or otherwise exclude themselves from class membership and are therefore bound by the terms of the <u>Dupell</u> Settlement, which Defendants contend bars the types of claims that Plaintiffs now bring against

7

Bostian. Finally, Conseco contends that the California <u>Dupell</u> judgment is entitled to full faith and credit in North Carolina, and as a result of all of Plaintiffs' claims being barred, Plaintiffs have no possibility of establishing a cause of action against Bostian in a North Carolina state court. In response, Plaintiffs do not dispute that they are members of the <u>Dupell</u> class, nor do they contend that they were excluded from class membership.[2] However, Plaintiffs contend first that the <u>Dupell</u> judgment has no preclusive effect on any of their claims because, inter alia, the judgment is not entitled to full faith and credit since Plaintiffs were not afforded adequate due process from the California court that rendered the class action judgment. In support of this contention, Plaintiffs assert that they never received notice of the <u>Dupell</u> action, nor of the Settlement, and that they have not had the ability to inquire or investigate through discovery whether they were in fact properly noticed or adequately represented in the <u>Dupell</u> action. In the Recommended Decision in this case, the Magistrate Judge found that as to these issues,

---

[2] While Plaintiffs do not dispute class membership, the Court has, nevertheless, reviewed the record in this case and determined that Plaintiffs are in fact class members of the <u>Dupell</u> action. The Notice of Class Action sent to all class members on September 12, 2000 defines the class as follows: "[a]ll persons who purchased universal life insurance policies from Massachusetts General Life [predecessor to Conseco]. . . between January 1, 1984 and July 23 1999 . . . and who continue to hold such . . . [p]olicies, or who have canceled, cashed in, surrendered, redeemed or otherwise terminated their . . . [p]olicies and have suffered a resulting loss including loss of coverage and loss of premiums." (Notice of Class Action at 2, Ex. B [Document #27].) Moreover, the provision regarding exclusion states that if a class member fails to make a timely written request for exclusion, the member will be "bound by the terms of the settlement" and "all orders and judgments in this lawsuit." (<u>Id.</u> at 4, 5.) Plaintiffs' insurance policies were issued by Massachusetts General Life and were purchased on or about June 4, 1996 and March 29, 1999. This fact places the policies within the parameters prescribed by the Notice. In addition, and by their own admission, Plaintiffs surrendered their policies and have suffered resulting financial loss. (<u>See</u> Complaint at ¶ 41.) Therefore, because Plaintiffs satisfy all the criteria required for class membership, and there is no evidence or issue that Plaintiffs have otherwise opted-out or excluded themselves from class membership, Plaintiffs are members of the <u>Dupell</u> class action.

8

"Plaintiffs have raised genuine issues concerning receipt of notice [and] representation in the California action" and for that reason, "the _Dupell_ judgment and settlement does not necessarily preclude all possibility of recovery." (Recommendation at 5.) However, for the reasons set for below, the Court does not adopt the finding of the Magistrate Judge that Plaintiffs have raised "genuine issues" regarding notice and representation in the _Dupell_ foreign class action judgment and therefore have a possibility of establishing a cause of action against Bostian on those grounds. Rather, the Court notes that based on the rules applicable to enforcement of foreign class action judgments the proper inquiry is not whether Plaintiffs have raised genuine issues regarding notice and representation in the foreign class action, but whether Plaintiffs, as absent class members, would nevertheless be bound by the foreign class action judgment in _Dupell_ under North Carolina law. Therefore, in order to determine the ultimate issue of whether because of the _Dupell_ judgment Plaintiffs would have no possibility of asserting claims against Bostian in a North Carolina court, the Court must determine (1) whether Plaintiffs, as absent class members, would be bound by the foreign class action judgment in _Dupell_ under North Carolina law; and (2) whether the _Dupell_ judgment, which incorporates the Stipulation of Settlement, has preclusive effect upon Plaintiffs' present claims.

    **i.**    **Whether Absent Class Members can be Bound by a Foreign Class Action Judgment**

It is well established that one is not bound by a judgment in which he is not designated as a party. _See_ Hansberry v. Lee, 311 U.S. 32, 40, 61 S. Ct. 115, 117, 85 L. Ed. 22 (1940). Furthermore, judicial action that attempts to enforce a judgment against an absent party runs afoul of the due process requirements of the Fifth and Fourteenth Amendments. _Id._ 311 U.S.

at 42, 61 S. Ct. at 118. However, to these general rules there is a recognized exception that the judgment in a class action, to which some members of the class are parties, may bind other members of the class who were not made parties to the action. Id.; see Taylor v. Mutual Life Ins. Co. of California, 200 S.E. 882, 886, 214 N.C. 770, 778 (1939). Nevertheless, an absent class member may only be bound by a foreign class action judgment if that judgment "satisfies the requirements of due process and of full faith and credit." Hansberry, 311 U.S. at 42, 61 S. Ct. at 118 ("[T]here is scope within the framework of the Constitution for holding in appropriate cases that a judgment rendered in a class suit is res judicata as to members of the class who are not formal parties to the suit."). The Supreme Court recognizes that "the Fourteenth Amendment does not compel state courts or legislatures to adopt any particular rule for establishing the conclusiveness of judgments in class suits . . . . [so long as] the procedure adopted fairly insures the protection of the interests of absent parties who are to be bound by it." Id.

When determining the conclusiveness of foreign class action judgments upon absent class members, North Carolina courts have adopted a full faith and credit analysis that incorporates the due process issues of sufficiency of notice and adequacy of representation. See generally, Taylor v. Mutual Life Ins. Co., 200 S.E. 882, 214 N.C. 770 (1939); Moody v. Sears Roebuck & Co., 664 S.E.2d 569 (N.C. Ct. App. 2008); Freeman v. Pac. Life Ins. Co., 577 S.E.2d 184, 156 N.C. App. 583 (N.C. Ct. App. 2003). Therefore, this Court will determine the conclusiveness of the California Dupell judgment and whether that judgment binds Plaintiffs as absent class members by applying the full faith and credit jurisprudence of North Carolina courts.

The full faith and credit jurisprudence of the North Carolina courts necessarily begins with the provision of the United States Constitution providing that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1. Congress has further provided by statute that the "judicial proceedings of any court of any such State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. The Supreme Court has consistently recognized that "the judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced." Underwriters Nat'l Assurance Co., v. North Carolina Life & Accident & Health Ins. Guar. Ass'n, 455 U.S. 691, 704, 102 S. Ct. 1357, 1365, 71 L. Ed. 2d 558 (1982) (quotation omitted). Moreover, the Supreme Court has recognized that the preclusion doctrine of res judicata is included in the full faith and credit doctrine: "[f]ull faith and credit thus generally requires every State to give to a judgment at least the res judicata effect which the judgment would be accorded in the State which rendered it." Durfee v. Duke, 375 U.S. 106, 109, 84 S. Ct. 242, 244, 11 L. Ed. 2d 186 (1963). Furthermore, full faith and credit principles extend to class-action litigation: "a judgment entered in a class action, like any other judgment entered in a state judicial proceeding, is presumptively entitled to full faith and credit under the express terms of [section 1738]." Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 374, 116 S. Ct. 873, 878, 134 L. Ed. 2d 6 (1996).

However, a state's duty to presumptively accord full faith and credit to an out of state judgment is not without limitation. "[A] judgment of a court in one State is conclusive upon the

merits in a court in another State only if the court in the first State had power to pass on the merits - had jurisdiction, that is, to render the judgment . . . Consequently, before a court is bound by the judgment rendered in another State, [the court in the second State] may inquire into the jurisdictional basis of the foreign court's decree." <u>Underwriters</u>, 455 U.S. at 704-05, 102 S. Ct. at 1366 (quotation omitted). Furthermore, "[a] judgment obtained in violation of procedural due process is not entitled to full faith and credit." <u>Griffin v. Griffin</u>, 327 U.S. 220, 228, 66 S. Ct. 556, 560, 90 L. Ed. 635 (1946). Consistent with Supreme Court jurisprudence, under North Carolina law, "the judgment from the rendering court must be deemed to have satisfied certain requisites of a valid judgment before full faith and credit will be granted to it." <u>Boyles v. Boyles</u>, 302 S.E.2d 790, 793, 308 N.C. 488, 491 (1983). In light of these exceptions to the presumption of full faith and credit, the reviewing state court "may inquire as to the legitimacy of the foreign court's judgment." <u>Moody</u>, 664 S.E.2d at 580. However, particularly in the context of class action judgments, "North Carolina Courts have adopted a "very limited" scope of review of foreign courts' determinations of jurisdictional questions" and "due process conclusions." <u>Id.</u> at 580, 581. Moreover, North Carolina courts are "bound by the foreign judgment where the record reveals that the jurisdictional issues were fully litigated in, and determined by, the court which rendered the judgment." <u>Id.</u> (quotation omitted); <u>see also</u> <u>Boyles</u>, 302 S.E.2d at 793, 308 N.C. at 491 (stating that "a judgment is entitled to full faith and credit . . . when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the judgment") (quotation omitted). Thus, under North Carolina law, in deciding whether to accord full faith and credit

12

to a foreign class action judgment, North Carolina courts limit their inquiry to whether the due process and jurisdictional issues have been litigated and determined by the court rendering judgment.

In the present case, Plaintiffs contend that the California court class action judgment should not be afforded full faith and credit, and thus is not binding on them because Plaintiffs did not receive notice of the action nor of the Settlement. However, in applying the North Carolina courts' "limited review" approach in this class action context, North Carolina courts would afford full faith and credit to the California judgment in the <u>Dupell</u> action so long as the questions of jurisdiction and due process have been litigated and determined by the California court that rendered judgment. <u>See</u> <u>Boyles</u>, 302 S.E.2d at 793, 308 N.C. at 491 (stating that "a judgment is entitled to full faith and credit . . . when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the judgment") (quotation omitted). Specifically with regard to notice in the context of a foreign class action, North Carolina courts have adopted the view that actual notice is not required in these circumstances to meet the demands of due process, so long as the court rendering judgment makes a specific finding that adequate notice was given to the members of the class. <u>See</u> <u>Freeman v. Pac. Life Ins. Co.</u>, 577 S.E.2d 184, 187, 146 N.C. App. 583, 588 (N.C. Ct. App. 2003); <u>see also</u> <u>Hamilton v. Memorex Telex Corp.</u>, 454 S.E.2d 278, 285, 118 N.C. App. 1, 14 (N.C. Ct. App. 1995) (concluding that adequate notice for a class action, as held by the Supreme Court, is "the best notice practical under the circumstances, including notice to all members who can be identified through reasonable efforts, although it need not comply with

the formalities of service of process").  In this regard, the Court notes that the California court in the <u>Dupell</u> action made a finding that the notice methodology ordered by the court and implemented by the defendants to the class action "(i) constitute[d] the best practicable notice, (ii) constitute[d] notice that [was] reasonably calculated, under the circumstances, to apprise Class members of the pendency of this action, and of their right to object to or exclude themselves from the proposed settlement . . . , (iii) [was] reasonable and constitute[d] due, adequate, and sufficient notice to all persons entitled to receive notice . . . , and (v) [met] all applicable requirements of California law, the due process clause of the United States Constitution, and the Rules of the Court."  (Order Granting Motion for Final Approval and Judgment in <u>Dupell v. Massachusetts Gen. Life Ins. Co.</u> at 2, Ex. B [Document #21].) ("Final Order")  Based on the language of the Final Order in the <u>Dupell</u> action, the Court notes that the California court in the <u>Dupell</u> class action specifically found as fact that notice was proper and that defendants to the action had provided the required notice.  In addition, the California trial court made a specific finding that notice was adequate, and under North Carolina law, North Carolina courts would not undertake additional review of this due process determination. Therefore, for full faith and credit purposes, a North Carolina court would find that notice was adequate in the California judgment despite Plaintiffs' allegations that they did not receive actual notice of the <u>Dupell</u> action and Settlement.

Plaintiffs also raise the due process concern that they may not have been adequately represented in the <u>Dupell</u> action because they have not had the ability to inquire or investigate through discovery the issue of adequate representation in the foreign class action.  However, the

14

fact that Plaintiffs may not have had the opportunity to investigate the issue of representation in the Dupell action does not determine whether or not due process was satisfied such that the judgment might be afforded full faith and credit; rather, under North Carolina law the inquiry is whether the issue of adequate representation was determined by the California court. The California court made the following finding regarding representation in the class action: "[t]he Court finds that Plaintiffs' counsel and the Class representatives adequately represented the Class for purposes of the litigation and entering into and implementing the Settlement Agreement." (Final Order at 7.) Therefore, the issue of representation has been litigated and determined by the California court. North Carolina courts therefore would not undertake further additional review of this due process determination. Thus, for full faith and credit purposes, a North Carolina court would find that representation was adequate in the California class action despite Plaintiffs' speculative contentions and their desire to conduct additional discovery regarding inadequate representation.

Finally, although Plaintiffs do not challenge the jurisdiction of the California court to render a judgment in the Dupell action, the Court sua sponte considers the issue because under North Carolina law, the foreign court that rendered judgment must have had jurisdiction over the parties and the matter in order for the judgment to be entitled to full faith and credit in North Carolina. See Underwriters, 455 U.S. at 704, 102 S. Ct. at 1366 ("[A] judgment of a court in one State is conclusive upon the merits in a court in another State only if the court in the first State had power to pass on the merits - had jurisdiction, that is, to render the judgment") (quotation omitted). The Court notes that the California court presiding over the Dupell class

action made the following factual finding: "[t]he Court finds that it has personal jurisdiction over all parties and Class members and has subject matter jurisdiction to approve the Settlement Agreement." (Final Order at 2). Therefore, the issue of jurisdiction has been litigated and determined by the California court and under North Carolina law, North Carolina courts would not undertake additional review of this jurisdictional determination, thus for full faith and credit purposes, a North Carolina court would find that the California court had jurisdiction to render judgment in the <u>Dupell</u> class action.

In sum, the California court which rendered judgment in the <u>Dupell</u> class action made determinations that the court had jurisdiction to render judgment, and that the judgment was not obtained in violation of due process. Under North Carolina law, because these determinations were made by the court rendering judgment, North Carolina courts would not undertake additional review of these determinations, and the <u>Dupell</u> judgment would be entitled to full faith and credit in North Carolina. Therefore, since an absent class member may only be bound by a foreign class action judgment if that judgment satisfies the requirements of due process and full faith and credit, and the <u>Dupell</u> judgment in this case met those requirements, a North Carolina court would find that Plaintiffs are bound by the California class action judgment, even if they did not receive actual notice and will not receive an additional opportunity to investigate the issue of adequate representation in the <u>Dupell</u> action. <u>See</u> <u>Hansberry</u>, 311 U.S. at 42, 61 S. Ct. at 118; <u>Moody</u>, 664 S.E.2d at 580, 581. Having made the determination that Plaintiffs are bound by the <u>Dupell</u> judgment, the next issue for the Court is whether the <u>Dupell</u> judgment, which incorporates the Settlement, has preclusive effect upon any

16

of Plaintiffs' present claims.

### ii. Whether the <u>Dupell</u> Class Action Judgment Has Preclusive Effect on Plaintiffs' Claims

As discussed above, the Court has concluded that Plaintiffs are class members bound by judgment in the <u>Dupell</u> class action. Moreover, a North Carolina court would afford full faith and credit to the <u>Dupell</u> judgment, and therefore the language of the judgment and the incorporated Settlement are entitled to full effect and recognition in North Carolina. <u>See</u> <u>Underwriters</u>, 455 U.S. at 704, 102 S. Ct. at 1365 ("the judgment of a state court should have the same credit, validity, and effect, in every other court of the United States") (quotation omitted). Defendants contend that the <u>Dupell</u> Settlement contains a release provision which bars the types of claims that Plaintiffs assert against Bostian, and therefore Plaintiffs have no possibility of establishing a cause of action against Bostian in a North Carolina court. In response, Plaintiffs contend that the <u>Dupell</u> Settlement and incorporated release, which became final November 22, 2000, cannot extend to claims against Bostian for conduct that occurred after the Settlement and judgment became effective in 2000, and therefore, Plaintiffs have a possibility of establishing a cause of action against Bostian based on alleged misconduct that occurred after November 2000. Specifically, Plaintiffs allege that Bostian made misrepresentations to Plaintiffs after November 22, 2000 in a meeting between Bostian and Plaintiffs in 2003 and that those allegations form the basis of viable claims against Bostian. In light of these contentions, the question before the Court is whether the language of the Settlement, and particularly the release provision, indeed bars any or all of Plaintiffs' present claims.

The language pertinent to this discussion is located in the "Release and Waiver, and

Order of Dismissal" provision (the "Release") of the <u>Dupell</u> Settlement. (<u>See</u> Settlement at 14-19.) The Release states that class members, which as indicated above includes Plaintiffs in this case, expressly "release and discharge the Releasees from, any and all causes of action, claims, [and] damages . . . that have been, could have been, may be or could be alleged or asserted now or in the future by [ ] any class member . . . against the Releasees . . . on the basis of, connected with, arising out of, or related to, in whole or in part, the Released Transactions and servicing related to the Released Transactions." (Settlement at 15.) In this case, to the extent that Plaintiffs' claims fall within the scope of the Release, Plaintiffs' claims are barred leaving no possibility of establishing a cause of action against Bostian. In this regard, upon review of the terms "Releasee" and "Released Transactions" as defined in the Release, the Court notes that with respect to the substance of Plaintiffs' claims as asserted in their Complaint, Plaintiffs' claims indeed fall within the scope of the Release because the Court finds that Bostian is a Releasee and Plaintiffs claims against Bostian are based on Released Transactions. However, the Court further notes that to the extent that Plaintiffs assert claims against Bostian based on conduct that occurred after the Settlement became final in 2000 that would otherwise substantively fall within the scope of the Release, those claims based on post November 22, 2000 conduct do not fall within the scope of the Release language, and therefore are not "released and discharged" claims. In North Carolina, "the general rule regarding the scope of a release [is that] it ordinarily operates on the matters expressed therein which are already in existence at the time of the giving of the release. Accordingly, demands originating at the time a release is given or subsequently, and demands subsequently maturing or accruing, are not as a rule discharged by the release

18

unless expressly embraced therein or falling within the fair import of the terms employed." Financial Services of Raleigh, Inc. v. Barefoot, 594 S.E.2d 37, 41-42, 163 N.C. App. 387, 393 (N.C. App. 2004) (citation and emphasis omitted). Moreover, "[i]n deciding whether a claim not asserted at the time of the release falls within the scope of the release, the critical inquiry is whether the claim or right can be said to exist such that a party is capable of waiving it or preserving it." Id. at 594 S.E.2d at 42, 163 N.C. App. at 394. In this regard, the Court notes that the Release is a general release and that it does not expressly release claims originating at the time of the Release or subsequently, or subsequently maturing or accruing in that the Release releases and discharges claims "that have been, could have been, may be or could be alleged or asserted now or in the future" arising out of or related to the "released transactions." (Settlement at 15.) The Court notes that this provision releases claims against Bostian based on conduct that occurred prior to the Release, but that it does not release claims against Bostian based on conduct that occurred after the Release because any such claims can not be said to have existed at the time the Release was entered into. See Financial Services of Raleigh, Inc., 594 S.E.2d at 42, 163 N.C. App. at 394 ("[i]n deciding whether a claim not asserted at the time of the release falls within the scope of the release, the critical inquiry is whether the claim or right can be said to exist such that a party is capable of waiving it or preserving it."). Therefore, the Court concludes that notwithstanding the fact that all of Plaintiffs' claims as stated in the Complaint appear to substantively fall within the scope of the Release and are thus barred, any of Plaintiffs' claims that are based on conduct by Bostian occurring after November 22, 2000 do not fall within the scope of the Release, and therefore are not barred. Thus, it appears that Plaintiffs

have a possibility of establishing a cause of action against Bostian for those post November 22, 2000 claims.

### 2. Plaintiffs' Additional Contentions Based on Res Judicata

Having reached the conclusion that Plaintiffs' claims based on conduct that occurred prior to November, 22, 2000 are barred by the <u>Dupell</u> judgment, the Court notes that Plaintiffs nevertheless contend that the <u>Dupell</u> judgment has no preclusive effect on their claims because the judgment fails to meet all the elements necessary for res judicata to apply under North Carolina law. Under the doctrine of res judicata in North Carolina in a non-class action case, a final judgment on the merits in a prior action will prevent a second suit based on the same cause of action between the same parties or those in privity with them. <u>See, e.g.</u>, <u>State ex rel. Tucker v. Frinzi</u>, 474 S.E.2d 127, 128, 344 N.C. 411, 413 (1996). Plaintiffs contend that Defendants have not asserted any commonality of factual or legal issues between this action and the <u>Dupell</u> action, and that there is no identity of parties because Bostian and Conseco (successor to Massachusetts General Life, the defendant in the <u>Dupell</u> class action) are not in privity with one another. The Court further notes that the Magistrate Judge in the Recommendation accepted these contentions and concluded that Plaintiffs' commonality and identity of parties arguments raised "genuine issues," and on that basis recommended that the Motion to Remand should be granted because these potential "genuine issues" did not preclude all possibility for Plaintiffs to establish a cause of action against Bostian. However, the res judicata framework traditionally applied to non-class action cases does not apply when determining the preclusive effect of a foreign class action judgment on a party's subsequent

20

claims. Rather, as explained previously, in the class action context, the proper inquiry is (1) whether the absent class members are bound to the prior foreign class action judgment under North Carolina law; and, (2) whether that judgment has preclusive effect upon the absent class members' subsequent claims. See Taylor, 200 S.E. at 886, 214 N.C. at 778; Moody, 664 S.E.2d at 579-82; Freeman, 577 S.E.2d at 186-89, 146 N.C. App. at 586-90. Therefore, even if the Court accepted Plaintiffs' contentions regarding a lack of commonality and privity, those issues would not affect the determination of whether the Dupell judgment, as least as to the pre-November 22, 2000 claims, has preclusive effect, because commonality and privity are legal concepts that relate to a res judicata analysis outside of the class action context. Instead, in this case the Court has determined that to the extent Plaintiffs' claims are based on Bostian's alleged misconduct that occurred prior to November 22, 2000, Plaintiff's claims are barred by the language of a foreign class action judgment, which, as explained above, involves an analysis distinct from the res judicata framework applied in non-class action cases. Id. Therefore, the Court does not adopt the Recommendation's particular conclusion that these issues, pre-November 22, 2000, would create a possibility of a claim by Plaintiffs against Bostian.

Having concluded that Plaintiffs' claims against Bostian based on his alleged misconduct that occurred before November 22, 2000 are barred by the Dupell Release, and that Plaintiffs' claims based on Bostian's alleged misconduct that occurred after November 22, 2000 are not covered by the Release, the question left for the Court is whether any other circumstance exits here wherein Plaintiffs have no possibility of establishing a cause of action against Bostian for claims based on his alleged misconduct that occurred after November 22, 2000.

### 3. Defendants' Additional Contentions Regarding the Statute of Limitations and the Sufficiency of Plaintiffs' Claims

The Court notes that in addition to Defendants' argument that all of Plaintiffs' claims are barred by the <u>Dupell</u> judgment, Defendants also contend that Plaintiffs' claims are barred by the applicable statutes of limitations, and that Plaintiffs' claims against Bostian for fraud, failure to procure, and constructive fraud fail as matter of law because they are either factually inadequate or insufficient, and therefore, Plaintiffs have no possibility of establishing a cause of action against Bostian in a North Carolina court. With regard to the statute of limitations argument, the Court notes that the limitations periods for Plaintiffs' claims are all four years or less. Moreover, Plaintiffs contend that Bostian made misrepresentations to Plaintiffs after November 22, 2000, specifically, a meeting between Bostian and Plaintiffs on or about June 4, 2003, and that Plaintiffs base their claims in part on these misrepresentations. The Court finds that to the extent that Plaintiffs base their claims on the alleged misconduct that occurred on or about June 4, 2003, those claims with a four-year statute of limitations, specifically Plaintiffs' unfair and deceptive trade practices claims, are timely in that Plaintiffs filed their Complaint on April 5, 2007. Therefore, the Court concludes that Plaintiffs have demonstrated some possibility of establishing a cause of action against Bostian for their unfair and deceptive trade practices claims based on alleged misconduct that occurred on or about June 4, 2003.

In addition, with regard to the statute of limitations argument, the Court notes that in the Recommended Decision issued in this case the Magistrate Judge found that the statute of limitations for Plaintiffs' claims based on Bostian's misrepresentations may have been tolled until March 2005 due to issues regarding the discovery of Bostian's alleged misrepresentations to

Plaintiffs, and therefore that there is a possibility that Plaintiffs' claims are not foreclosed by the statute of limitations. The Magistrate Judge further found that with regard to Plaintiffs' fraud claims and Defendants' contentions regarding the insufficiency of those claims as pled, the parties raised issues regarding reasonable reliance which did not negate all possibility of Plaintiffs establishing a cause of action against Bostian. The Recommended Decision therefore concluded that Defendants had not shown that the statute of limitations and sufficiency of claims contentions would conclusively preclude any possibility that Plaintiffs may be able to establish a cause of action against Bostian. The Court adopts this particular conclusion of the Magistrate Judge only to the extent that the Court finds that as to these issues there is only a possibility for Plaintiffs to establish a cause of action against Bostian for claims that are based on alleged misconduct occurring after November 22, 2000. Therefore, since Defendants have failed to demonstrate that there is no possibility for Plaintiffs to establish a cause of action against Bostian in a North Carolina Court, specifically for claims based on alleged misconduct that occurred after November 22, 2000, the Court concludes that Bostian is not fraudulently joined and Bostian will be considered in determining the existence of diversity jurisdiction.

## III.   CONCLUSION

For the reasons discussed above, the Court concludes that Bostian has not been fraudulently joined in this case because Defendants have not demonstrated that there is no possibility for Plaintiffs to establish a cause of action against Bostian in a North Carolina state court. Nevertheless, the Court finds that Plaintiffs' claims against Bostian that are based on alleged misconduct occurring prior to the Release, that is November, 22, 2000, are barred by the

language of the <u>Dupell</u> class action judgment to which Plaintiffs are bound and which is entitled to full faith and credit in North Carolina.  In this regard, the Court departs from the conclusion reached in the Recommended Decision that Plaintiffs have raised "genuine issues" regarding their claims against Bostian, because based on the Court's findings, Plaintiffs' claims against Bostian that are based on alleged misconduct occurring before November 22, 2000 are precluded by the <u>Dupell</u> judgment as a matter of law under the rules applicable to enforcement of foreign class action judgments, and therefore there are no genuine issues of material fact in this case that would allow Plaintiffs any possibility of establishing a cause of action against Bostian based on those claims.  However, Defendants have not established that Plaintiffs have no possibility of establishing a cause of action against Bostian in a North Carolina state court for claims that are based on alleged misconduct occurring after November 22, 2000, and thus, the Court concludes that Bostian has not been fraudulently joined in this matter.  Moreover, because Bostian remains as a defendant in this case, the Court lacks diversity jurisdiction since Bostian and Plaintiffs share North Carolina citizenship.  Accordingly, Plaintiffs' Motion to Remand will be granted.  Furthermore, for the reasons stated in the Recommended Decision in this case, the Court denies Plaintiffs' request for attorneys' fees and costs.

IT IS THEREFORE ORDERED that for the reasons given herein, Plaintiffs' Motion to Remand [Document #22] is GRANTED, and this matter is hereby REMANDED to the General Court of Justice, Superior Court Division, Davidson County, North Carolina.

IT IS FURTHER ORDERED that for the reasons stated in the Magistrate Judge's Recommendation, Plaintiffs' request for attorneys' fees and costs is DENIED.

An Order consistent with this Memorandum Opinion will be entered contemporaneously herewith.

This, the 17th day of December, 2008.

United States District Judge